

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4429 | **DATE** | 9/29/2004 |
| **CASE TITLE** | Anthony Enis vs. James Schomig | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, petitioner's petition for writ of habeas corpus is denied. Further, petitioner's motion for discovery is denied. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ For further detail see memorandum opinion attached to the original minute order.

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | SEP 29 2004 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| MW | courtroom deputy's initials | date mailed notice |

Document Number

34

U.S. DISTRICT COURT
CLERK
2004 SEP 29 PM 2: 53

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY ENIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 01 C 4429 |
| | ) | |
| JAMES SCHOMIG | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

DOCKETED
SEP 29 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Anthony Enis' ("Petitioner") Second Amended Petition for writ of *habeas corpus* ("Petition") pursuant to 28 U.S.C. § 2254, and Petitioner's motion for discovery. For the reasons stated below, we deny the Petition and the motion for discovery.

## BACKGROUND

Petitioner was convicted of the murder of Merlinda Entrata ("Entrata") and sentenced to death in a jury trial in the Circuit Court, Lake County, Illinois ("trial court"). Petitioner appealed his conviction and sentence of death, and the Supreme Court of Illinois reversed the conviction and remanded the case to the trial court for a

new trial and new sentencing hearing. *People v. Enis*, 564 N.E.2d 1155, 1170 (Ill. 1990) ("*Enis I*"). On remand, Petitioner was again convicted of the murder of Entrata and sentenced to death in a jury trial in the trial court. Petitioner appealed his conviction and sentence and the Supreme Court of Illinois affirmed the trial court. *People v. Enis*, 645 N.E.2d 856, 877 (Ill. 1994) ("*Enis II*"). The Supreme Court of Illinois subsequently denied a rehearing. Petitioner filed a petition for *writ of certiorari* in the United States Supreme Court. However, the Court denied *writ of certiorari*. *Enis v. Illinois*, 516 U.S. 827, 827 (1995). Thereafter, Petitioner filed a *pro se* Petition for Post-Conviction Relief in the trial court. Petitioner, with assistance of counsel, then filed an amended and supplemented Petition for Post-Conviction Relief ("Amended Petition for Post-Conviction Relief") in the trial court. The trial court dismissed Petitioner's Amended Petition for Post-Conviction Relief. Petitioner then appealed the trial court's dismissal of his Amended Petition for Post-Conviction Relief, and the Supreme Court of Illinois affirmed the trial court. *People v. Enis*, 743 N.E.2d 1, 32 (Ill. 2000) ("*Enis III*"). The Supreme Court of Illinois subsequently denied a rehearing. Petitioner filed a petition for *writ of certiorari* with respect to the dismissal of Petitioner's Amended Petition for Post-Conviction Relief with the United States Supreme Court. However, the Court denied *writ of certiorari*. *See Enis v. Schomig*, 533 U.S. 908, 908 (2001).

In January 2003, the former governor of Illinois commuted Petitioner's death sentence to a sentence of life without parole.

## LEGAL STANDARD

A district court may entertain a *habeas corpus* petition from a "person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254(d):

> An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## DISCUSSION

### I. Request For Evidentiary Hearing

Petitioner has asked this court to hold an evidentiary hearing and has made generalized assertions that the trial court's fact finding procedures were inadequate, that the trial court did not adequately develop the material facts at trial, and that the trial court did not provide him with a full, fair, and adequate hearing. Petitioner has also specifically requested an evidentiary hearing in Claim III of his petition, relating

3

to ineffective assistance of counsel, and also in Claim VII of his petition, relating to alleged *Brady* discovery violations. *Brady v. Maryland,* 373 U.S. 83, 87 (1963) (holding that "the suppression of evidence favorable to an accused upon request violates due process where the material is material either to guilt or to punishment").

After Petitioner was convicted and sentenced again upon remand, the trial court denied Petitioner's Amended Petition for Post-Conviction Relief without conducting an evidentiary hearing. In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois addressed Petitioner's claim of ineffective assistance of counsel and noted that the mitigating evidence that Petitioner included "largely duplicates or is cumulative of the evidence introduced at defendant's sentencing hearing." *Enis III,* 743 N.E.2d at 11-26, 30. The Supreme Court of Illinois concluded that the trial court "did not err in dismissing this claim without an evidentiary hearing." *Id.* at 30. The Supreme Court of Illinois also addressed Petitioner's claim of a *Brady* discovery violation when the trial court denied his request for files of the Waukegan Police Department regarding the victim and the Petitioner. The Supreme Court of Illinois noted that Petitioner never before alleged that a *Brady* discovery violation had occurred after either his original trial or re-trial, and that his request for such information "was little more than a fishing expedition." *Id.* at 31.

Petitioner has failed to establish that he was precluded from developing the factual basis for his claims in the trial court. A federal court in *habeas* review is "not an alternative forum for trying facts and issues which a prisoner made

4

insufficient effort to pursue in state proceedings." *Williams v. Taylor,* 529 U.S. 420, 437 (2000). Even so a federal court is authorized under 28 U.S.C. § 2242, 28 U.S.C. § 2254(e)(2), and Rule 8(a) of the Rules Governing Section 2254 Cases to order an evidentiary hearing in a habeas corpus action brought pursuant to 28 U.S.C. § 2254(a). A federal court must hold an evidentiary hearing "if the petitioner has alleged facts that would entitle him to relief and the state courts, for reasons beyond his control, did not consider his claim in a full and fair hearing." *United States ex rel. Hampton v. Leibach,* 347 F.3d 219, 234-35 (7th Cir. 2003) (citing *Townsend v. Sain,* 372 U.S. 293, 312-13 (1963)). The Seventh Circuit defines a "full and fair hearing" as a hearing "that afforded the petitioner a complete opportunity to present the facts relevant to his constitutional claim." *Id.* In addition, the Seventh Circuit has made it clear that "[a] hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations." *Dellenbach v. Hanks,* 76 F.3d 820, 822 (7th Cir. 1996) (quoting *Daniels v. United States,* 54 F.3d 290, 293 (7th Cir.1995)).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") heightened the threshold for petitioners seeking evidentiary hearings on factual matters not adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Since Petitioner filed his original petition for writ of *habeas corpus* after the effective date of AEDPA, its provisions would ordinarily govern our review. *See Lambert v. McBride*, 365 F.3d 557, 561 (7th Cir. 2004) (finding that the AEDPA provisions govern the review of a habeas petition filed after the effective date of AEDPA).

However, the Seventh Circuit has also cautioned that Section 2254(e)(2) does not apply if "'fail[ure] to develop the factual basis of a claim in State court proceedings' can not be attributed to something the petitioner 'did or omitted.'" *Matheney v. Anderson*, 253 F.3d 1025, 1039 (7th Cir. 2001); *see Newell v. Hanks*, 283 F.3d 827, 838 (7th Cir. 2002) (stating that "§ 2254(e)(2), which circumscribes a federal court's ability to hold an evidentiary hearing if the petitioner has "failed" to develop the factual record in state court, does not apply . . . [if Petitioner's] claims went undeveloped through no fault of his own."). Where the failure by the state court cannot be attributed to the petitioner, the court should "evaluate the request for an evidentiary hearing under pre-AEDPA standards." *Matheney*, 253 F.3d at 1039.

Under the standards applicable prior to the AEDPA, "a federal evidentiary hearing is required if (1) a habeas petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts--for reasons beyond the control of the petitioner-never considered the claim in a full and fair hearing." *Id.*

In this case, however, even if we interpreted the facts in a manner that did not attribute the failure to develop the factual basis of the defaulted claims to petitioner or his counsel, and therefore applied the pre-AEDPA standard, Petitioner could not satisfy that standard. Petitioner has not presented facts on the defaulted claims which, if true, would entitle him to relief, as we explain below. We have sufficient evidence before us to make a proper ruling on Petitioner's *habeas* petition, and therefore, an evidentiary hearing is not required.

## II. Petitioner's Motion For Discovery

Petitioner has submitted a motion for discovery. Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("Rules Governing § 2254 Cases") provides that a federal court has discretion to grant leave for discovery in a *habeas* proceeding upon a showing of good cause. The Rule 6 standard is consistent with the Supreme Court's opinion in *Harris v. Nelson*, 394 U.S. 286, 300 (1969), which held that discovery is proper in those *habeas* proceedings "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *See Bracy v. Gramley*, 520 U.S.

899, 908-09 (1997) (citing Rules Governing § 2254 Cases, Rule 6 advisory committee's note). However, the Seventh Circuit has observed that "a *Brady* request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an *in camera* inspection of the government's files in every case." *See U.S. v. Mitchell*, 178 F.3d 904, 909 (7th Cir. 1999) (quoting *U.S. v. Phillips*, 854 F.2d 273, 278 (7th Cir.1988)).

Petitioner claims that the state withheld evidence favorable to his case and seeks discovery of the contents of the Waukegan police file on his case. In particular, Petitioner seeks four main pieces of information from that file. First, Petitioner hopes to discover information pertaining to a purported witness, Mickey Johnson, who Petitioner claims was near the murder suspect in the parking lot after the crime and might have important eyewitness details regarding that suspect. Second, Petitioner seeks recordings and other information from responding police units on the morning of the murder, claiming that such documents might contain undisclosed information regarding the suspect's vehicle. Third, Petitioner asks for discovery regarding a call to the police from Mary Greener ("Greener"), reporting a suspicious man parked in a car in the lot at the victim's apartment complex three days before the murder, the same day that the victim's car was reportedly vandalized. During the call, Greener allegedly provided police with the car's license plate number, which Petitioner suggests does not match the license plate number of his

girlfriend's car. Finally, Petitioner asks for discovery of cigarette butts reportedly recovered from the area where the suspect was seen sitting prior to the murder. Petitioner claims that DNA testing on these cigarette butts will exonerate him.

The *Brady* line of cases outlines the "prosecution's affirmative duty to disclose evidence favorable to a defendant," whether the defendant requested the information or not, and holds that "constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). This reasonable probability does not require "demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," but instead asks "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

Respondent properly points out that Petitioner did not raise *Brady* discovery claims at trial or on direct appeal from his conviction. As such, Respondent suggests that these claims are procedurally defaulted. The Supreme Court of Illinois noted that Petitioner had not previously raised these claims, but the court did not hold that Petitioner had waived the *Brady* claims in its opinion upholding the trial court's decision to quash the requested discovery. *Enis III*, 743 N.E.2d at 30-31. Where the state court does not rely on its procedural rule to bar a petitioner's claim, the

procedural rule is not an "independent" state ground as to the disposition of that claim and therefore does not bar review of that claim in a *habeas* proceeding. *Prihoda v. McCaughtry,* 910 F.2d 1379, 1382-83 (7th Cir. 1990).

Petitioner has failed to show good cause for this court to grant leave for discovery. In his first two discovery requests, those for police communications and information regarding Mickey Johnson, Petitioner does not present specific facts that lead us to believe discovery will reveal a *Brady* violation or otherwise exculpate Petitioner. We have no specific reason to suspect that the Waukegan police report contains either the police communications or witness information that Petitioner seeks, nor do we have reason to believe that if such information were present, it would favor Petitioner. Given the evidence already presented against Petitioner, we do not believe that the exclusion of these documents undermines confidence in the fairness of Petitioner's trial.

As to Petitioner's discovery request relating to the police report by Greener, the Supreme Court of Illinois found that Petitioner's attempted discovery on this point "was little more than a fishing expedition" and that the trial court acted within its discretion when it quashed Petitioner's subpoena for that information. *Enis III,* 743 N.E.2d at 31. Nothing links the man in the car at the victim's apartment complex three days before the murder to the suspect seen at the murder scene or to the car that the suspect may have used to flee the murder scene. Given the weight of the evidence against Petitioner, we do not believe that fully developing the facts

regarding the man in the car at the victim's apartment complex three days before the murder would demonstrate that petitioner is confined illegally. *Bracy*, 520 U.S. at 908-09. We therefore agree with the conclusion of the Supreme Court of Illinois as to discovery denial. Further, in light of the presumption of correctness that is afforded to state court findings of fact and the extensive discovery that has already occurred in this case, we find that discovery does not need to be reopened. Therefore, Petitioner's motion for discovery is denied.

Finally, Petitioner has made reference in his Petition that a second post-conviction proceeding is pending in Illinois state court regarding DNA evidence. Petitioner has asked this court to order discovery relating to such DNA evidence. We do not have any information tending to establish any inordinate delay in the state proceedings. Thus, Petitioner has not shown that he has exhausted state remedies with regard to the DNA evidence sought. Therefore, Petitioner's request for an order of discovery relating to DNA evidence is denied.

III. *Habeas Corpus* Petition

Petitioner argues that a writ of *habeas corpus* should be granted because: (A) his constitutional rights were violated when the trial court denied his motions to suppress identification testimony from witnesses, (B) the trial court made incorrect evidentiary and other rulings, including rulings relating to discovery, (C) his trial and appellate counsel provided ineffective assistance of counsel, (D) his constitutional

rights were violated when trial counsel did not call him to testify at trial, (E) he was not proven guilty beyond a reasonable doubt, (F) the prosecution engaged in prosecutorial misconduct, (G) his constitutional rights were violated when the trial court denied his discovery requests, and (H) his constitutional rights were violated by the cumulative effect of the above claims. Respondent contends that certain claims of the Petitioner are procedurally defaulted and that Petitioner's *habeas* Petition is without merit and should be denied.

### A. Motions to Suppress Identification

Petitioner argues that his constitutional rights were violated when the trial court denied his motions to suppress identification testimony from witnesses Clara Burk ("Burk") and Richard Hanson ("Hanson"). In determining the admissibility of identification testimony, factors that a court should consider include the "opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite,* 432 U.S. 98, 114-15 (1997). After considering those identification factors, a court should then weigh those factors against "the corrupting effect of the suggestive identification itself." *Id.*

While showing eyewitnesses a photograph of a suspect alone is "'the most suggestive and therefore the most objectionable method of pre-trial identification,'"

it does not necessarily give rise to a constitutional claim, even if less suggestive methods were available. *See Israel v. Odom*, 521 F.2d 1370, 1373-1375 (7th Cir. 1975) (holding that showing a victim a single suspect sketch, even where police could have assembled multiple sketches, did not provide grounds for *habeas*) (quoting *Kimbrough v. Cox*, 444 F.2d 9, 10 (4th Cir. 1971)). The trial court in Petitioner's case noted the suggestive effect of this method of identification and placed the burden on the prosecution of overcoming that effect under the factors set out in *Manson. See Enis II*, 645 N.E.2d at 870 (describing proceedings in the trial court). In its opinion addressing Petitioner's direct appeal from his re-trial, the Supreme Court of Illinois reviewed the trial court's application of the factors set forth in *Manson. Id.*

First the Supreme Court of Illinois noted that Burk and Hanson saw the suspect in the daylight and with sufficient opportunity to make an identification. *Id.* In fact, Burk claims that she saw the suspect on two occasions, once on the day of the murder and once several days before. *Id.* at 861. Next, the Supreme Court of Illinois noted that Burk and Hanson both gave relatively accurate descriptions of the suspect to the police and subsequently expressed confidence in their identification of Petitioner as to that suspect. *Id.* at 870. Finally, the Supreme Court of Illinois noted that it was only one day after the murder that both Burk and Hanson first identified Petitioner as the suspect. *Id.* After considering these factors, the Supreme Court of Illinois determined that the identifications made by Clara Burk and Richard Hanson

"were supported by independent recollection and were thus reliable and admissible at trial." *Id.* at 868-72.

We find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1);*see also Henderson v. Briley*, 354 F.3d 907, 908 (7th Cir. 2004) (explaining that a federal court on collateral review under § 2254(d)(2) need only determine "whether the state court's decision was so far out-of-bounds as to be unreasonable"). Therefore, Petitioner has failed to show that the trial court erred in denying his motions to suppress identification testimony from witnesses.

### B. Evidentiary Rulings

Petitioner argues that his constitutional rights were violated because of certain evidentiary rulings by the trial court. Petitioner contends that the trial court made evidentiary rulings during his trial that precluded him from introducing favorable evidence, while it allowed the State to introduce evidence that was prejudicial to his case. Specifically, Petitioner argues that the testimony of Kathleen Jackson ("Jackson") and an expert witness, Dr. Solomon Fulero ("Fulero") would have been supportive of his defense. Additionally, Petitioner maintains that evidence relating to the sexual assault of Entrata that was introduced at trial was improper.

The Seventh Circuit has stated that "the Due Process Clause does not permit federal courts to 'engage in a finely tuned review of the wisdom of state evidentiary

rules.'" *See Morgan v. Krenke,* 232 F.3d 562, 567 (7th Cir. 2000) (quoting*Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)). A federal court must only consider whether any unfair prejudice that may have derived from the evidentiary rulings would convince the court "that but for the errors, the outcome of the trial probably would have been different." *See Anderson v. Sternes,* 243 F.3d 1049, 1055 (7th Cir. 2001) (quoting *Alvarez v. Boyd,* 225 F.3d 820, 825 (7th Cir. 2000)).

### 1. Jackson's Testimony

In its opinion on Petitioner's first direct appeal, the Supreme Court of Illinois addressed the evidentiary rulings excluding the testimony of Jackson and Fulero and did not find that any of the rulings denied Petitioner a fair trial. *Enis I,* 564 N.E.2d at 1160-61, 1163-65. Petitioner claims that Jackson would have testified to seeing an African-American male dressed in dark clothes and wearing sunglasses similar to that of the suspect in an elevator at an apartment complex near the crime scene about 15 to 20 minutes prior to the murder. *Id.* at 1161. However, the Supreme Court of Illinois in *Enis I* pointed out numerous reasons for discounting the probative value of Jackson's testimony including: (a) that her description of the man in the elevator varied; (b) that she described him as having a different hair length and build than that of the suspect; (c) that she saw this individual in a different time frame than the other witnesses and in a different apartment complex; (d) that she did not see the white gloves or metal lunch box that the other witnesses saw with the

suspect; and (e) that when she later identified a photograph of the man she saw in the elevator, she selected a picture of Calvin Adams ("Adams"), a resident in the same complex where she saw the man in the elevator. *Id.* at 1160. Further, the Supreme Court of Illinois noted that the man Jackson saw on the elevator got off the elevator on the third floor, which was the same floor that Adams lived on. *Id.* The Supreme Court of Illinois concluded that it was "likely" that man in the elevator that Jackson saw was Adams, who was merely returning to his apartment in that building. *Id.* at 1161. In short, neither the trial court nor the Supreme Court of Illinois felt that excluding Jackson's testimony cast doubt on the outcome of the proceedings. We agree.

### 2. Fulero's Testimony

Petitioner claims that the trial court erred in not allowing Fulero to testify. First, Fulero would have testified that witnesses in high stress situations have less accurate recollections than calm witnesses, but the witnesses in this case do not appear to have been in high stress situations at the time they viewed the suspect. *Id.* Next, Fulero would have testified that seeing a weapon rendered eyewitness identification less accurate, but again, only one of these witnesses ever mentioned a weapon, and that witness did not see the weapon until after watching the suspect for a few moments. *Id.* Third, Fulero planned to testify that juries give too much weight to witness estimates of time, and as the court noted, such estimates were not relevant

to the witness testimony in this case. *Id.* at 1165. Only on Fulero's fourth topic, in which he proposed to show that witness confidence did not correlate with accuracy of identification, did the Supreme Court of Illinois find any relevance to the case. *Id.* However, the Supreme Court of Illinois found that this did not warrant a new trial, and we agree with that conclusion. Fulero's proposed testimony would not have changed the outcome of the trial and "would not have aided the trier of fact in reaching its conclusion." *Id.* at 1164.

Petitioner has added a fifth topic to those raised in his first direct appeal; he now claims that Fulero would have testified to the difficulty of cross-racial identifications by witnesses. In this case, four of the state's five witnesses are white, while Petitioner is African-American. *Enis III*, 743 N.E.2d at 19. However, it does not appear that the trial court actually ruled to exclude this fifth topic of the proposed testimony by Fulero because Petitioner did not raise it until his post-conviction appeal as part of an ineffective assistance of counsel claim. Petitioner having raised a similar ineffective assistance of counsel claim in this court, we will address this fifth topic of proposed testimony by Fulero in our discussion below regarding ineffective assistance of counsel.

### 3. "Other Crimes" And Other Allegedly Prejudicial Evidence

Petitioner also argues that the trial court's evidentiary rulings allowed the state to introduce prejudicial evidence regarding Petitioner's alleged sexual assault against

the victim and evidence regarding security measures taken by the victim after that assault. In addition, he claims that the court allowed the state to improperly impeach testimony by its own witness, John Twardy ("Twardy").

As to the "other crimes" evidence regarding the alleged sexual assault by Petitioner against the victim, we do not believe that the prejudicial effect of this testimony, as weighed against its probative value, denied Petitioner a "fundamentally fair trial." *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 953 (7th Cir. 1989). The Supreme Court of Illinois held that this evidence was "highly relevant and probative" in establishing a possible motive for this crime. *Enis II*, 645 N.E.2d at 865. We agree with the Supreme Court of Illinois that this evidence was highly probative, particularly in light of the timing of the murder just before the sexual assault trial was scheduled to begin. In addition, we agree that Petitioner's case was not prejudiced by the trial court's refusal to admit evidence regarding a six-day delay between the alleged rape and the victim's report to the police. *Id.* at 872. This delay, as the Supreme Court of Illinois noted, does not controvert the evidence against Petitioner in this case. *Id.* Thus, we agree with the Supreme Court of Illinois that the evidentiary rulings relating to these "other crimes" were proper and that they did not infringe upon Petitioner's constitutional rights.

On the remaining two issues, relating to security measures taken by the victim after the assault and impeachment of Twardy's testimony, we do not find that their impact changed the outcome of the trial. At Petitioner's second trial, the State

presented testimony and photographic evidence showing that Entrata installed "make-shift security devices" at her apartment after the alleged sexual assault. *Enis III*, 743 N.E.2d at 22. The Supreme Court of Illinois found that this evidence "was not a material factor in defendant's conviction." *Id.* We, too, doubt that it had any appreciable impact on the jury's ruling, in light of the other evidence against Petitioner, and thus agree with the conclusion of the Supreme Court of Illinois.

As for the alleged improper impeachment of Twardy, we again find that the impeachment did not alter the outcome of the trial, in light of the other evidence before the jury. Twardy was called to testify at Petitioner's trial regarding his observations of the suspect and, more importantly, of a red car pulling out of the parking lot at the victim's apartment complex just after the murder. *Enis II*, 645 N.E.2d at 863. During his testimony, Twardy disputed some of the information of his statements contained in the police report. *Id.* In particular, he testified that he "never told the officers that he saw the car pull away at a high rate of speed, and he never identified the car 'without hesitation.'" *Id.* Further, he testified that Petitioner's girlfriend's car was "'shinier' than the one he had seen and that there was some damage to the right front fender that he had not noticed on the car he had seen pulling away." *Id.* Finally, he testified that he had never seen the suspect enter the vehicle and had never told officers that the car had four doors. *Id.* By impeaching Twardy with the statements in the police report, Petitioner claims that the state improperly bolstered its case. However, as the Supreme Court of Illinois

noted, this impeachment evidence did not deprive Petitioner of a "fundamentally fair trial," the jury was properly instructed on how it could use the impeachment evidence, and the impeachment did not affect the outcome of the trial, in light of the other evidence against Petitioner. *Id.* at 402-03, 405.

Based upon the overwhelming evidence against the Petitioner at trial, we find it unlikely that any of the evidentiary rulings by the trial court would have affected the jury's verdict or deprived the Petitioner of his rights of due process. *See Morgan*, 232 F.3d at 566 (stating a "defendant's right to present a defense does not mean he has a right to irrelevant evidence or even relevant evidence") (citing *Taylor v. Illinois*, 484 U.S. 400 (1988)). Therefore, we find that the decisions of the Supreme Court of Illinois relating to evidentiary rulings were reasonable and were not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908.

### C. Ineffective Assistance of Counsel

Petitioner has made numerous claims of ineffective assistance of counsel on the part of his trial counsel and appellate counsel. In addressing those ineffective assistance of counsel claims that were not waived or otherwise procedurally defaulted, the Supreme Court of Illinois, in all instances, applied the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Enis II*, 645 N.E.2d at 872-74; *Enis III*, 743 N.E.2d at 11-12.

In *Strickland,* the United States Supreme Court set forth the standard for claims of ineffective assistance of counsel. In a claim for ineffective assistance of counsel, a Petitioner must show that (1) counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland,* 466 U.S. at 687-88; *see also Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004). To establish that counsel's performance was deficient, a petitioner must prove that counsel's performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. To demonstrate that the deficiency prejudiced the defense, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In addition, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." and thus should avoid questioning decisions that involve issues such as trial strategy. *Id.* at 689. *Strickland* also applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins,* 528 U.S. 259, 285 (2000) (stating that *Strickland* is the proper standard for evaluating a claim of ineffective assistance of appellate counsel).

1. Claims against Trial Counsel

a. Trial Counsel's Decision not to Call Witnesses in general

Petitioner maintains that trial counsel's opening statement promising to call

witnesses at trial whom he never actually called during the trial amounts to a denial of his right to effective assistance of counsel. In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois found that this claim was waived because it could have been raised on direct appeal. *Enis III*, 743 N.E.2d at 11-12. A state court's finding of waiver for failure to raise a claim on direct appeal is an independent and adequate state procedural finding which procedurally defaults that claim and bars it from federal *habeas* review. *See Schaff v. Snyder*, 190 F.3d 513, 526 (7th Cir. 1999) (refusing to review a claim in a *habeas* petition where the claim was found to be waived by the Illinois Appellate Court because the claim was before the "court at trial and the opportunity to challenge it was available on direct appeal but still was not pursued"). Since the Supreme Court of Illinois found that each of these claims was waived on an independent and adequate state procedural ground, Petitioner's claims in federal court are procedurally defaulted.

However, a federal court can review procedurally defaulted claims if a petitioner "shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure" or, in the absence of such a showing, if the refusal to review would result in a "fundamental miscarriage of justice." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). Ineffective assistance of counsel constitutes "cause" for failing to raise the defaulted claim if it satisfies the *Strickland* test. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). A petitioner

who demonstrates ineffective assistance of counsel must still show prejudice from that ineffectiveness to overcome procedural default. *See Winters v. Miller*, 274 F.3d 1161, 1166-67 (7th Cir. 2001) (applying prejudice test after hypothetically assuming the ineffectiveness claim was satisfied). Prejudice in this sense requires the petitioner to show "a reasonable probability that but for counsel's errors, the result of the proceeding would be different." *Winters*, 274 F.3d at 1167.

Since the Supreme Court of Illinois found that Petitioner's claim was waived on an independent and adequate state procedural ground, Petitioner's claim in federal court is procedurally defaulted. In addition, Petitioner has not alleged sufficient cause for his failure to raise the procedurally defaulted claims at the appropriate time. Furthermore, there is no indication that refusal to review by this court of such claims would result in a fundamental miscarriage of justice, given the evidence against Petitioner. *Scillia*, 193 F.3d at 917. Therefore, we find that the claim of ineffective assistance of trial counsel regarding trial counsel's improper opening statement is procedurally defaulted. Since neither exception to procedural default is applicable, procedural default bars *habeas* review on this claim. *Id.*


b. Trial Counsel's Decision not to Call Moselle Williams as a Witness

Petitioner maintains that trial counsel's decision not to call Moselle Williams ("Williams") as a witness at trial amounts to a denial of his right to effective assistance of counsel. Petitioner claims that Williams would have testified regarding

(1) the victim's six-day delay in reporting the alleged rape and (2) a statement, made by the victim to Williams, that she could not identify her attacker. *Enis III*, 743 N.E.2d at 12. This testimony, Petitioner contends, would have weakened the State's motive evidence by suggesting that the rape case against him was unlikely to result in conviction and therefore was unlikely to provoke someone to murder.

Petitioner, on direct appeal to the Supreme Court of Illinois from his second trial, argued that the trial court should have admitted evidence regarding the victim's six-day delay in reporting the alleged rape. *Enis II*, 645 N.E.2d at 872. The Supreme Court of Illinois noted that "the result in [Petitioner's] trial probably would not have been different" if the evidence regarding the six-day reporting delay had been admitted. *Id.* Petitioner then argued that trial counsel at his second trial was ineffective for failing to preserve for appellate review Petitioner's claim that the trial court erred in barring evidence regarding the six-day reporting delay. *Id.* at 873-74. The Supreme Court of Illinois applied the *Strickland* test and held that trial counsel's alleged ineffectiveness did not prejudice Petitioner at trial because the evidence regarding the six-day reporting delay would not have changed the outcome of the trial. *Id.* Finally, Petitioner attempted to raise this argument again in his Amended Petition for Post-Conviction Relief by claiming that trial counsel provided ineffective assistance of counsel by choosing not to call Williams as a witness at Petitioner's trial. However, the Supreme Court of Illinois held that its decision in *Enis II* was *res judicata* as to Williams' proposed testimony regarding the six-day

reporting delay. *Enis III*, 743 N.E.2d at 12. In explaining its decision, the Supreme Court of Illinois reiterated its conclusion from *Enis II* that evidence of the six-day reporting delay would not have changed the outcome in Petitioner's trial. *Id.*

Petitioner also claims that Williams would have testified that the victim told Williams that "she was sexually assaulted by a person wearing a mask and gloves and that she could not identify her attacker." *Enis III*, 743 N.E.2d at 13. In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois noted that Williams' proposed testimony regarding Entrata's alleged inability to identify her attacker was not supported by affidavit, which is a procedural requirement under Illinois law. *Id.* Nonetheless, the Supreme Court of Illinois went on to analyze the effect that such testimony would have had on Petitioner's trial to determine whether the omission of such testimony constituted ineffective assistance of counsel. *Id.* Ultimately, the Supreme Court of Illinois stated that Williams' "testimony would not have impeached or otherwise discredited the testimony" of the three prosecution witnesses who had identified the defendant. *Id.* In addition, the Supreme Court of Illinois stated that it "would not have negated [Petitioner's] motive" in the murder case. *Id.*

We find that the decisions of the Supreme Court of Illinois regarding Williams' proposed testimony, both on the six-day reporting delay and on Entrata's inability to identify her attacker, were reasonable and were not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908.

Williams' proposed testimony was intended to negate the State's motive evidence against Petitioner, but Williams' proposed testimony would not have negated that motive evidence. Petitioner may not have even been aware of at least some of these reported weaknesses in the rape case against him, and he certainly could not have been certain of their impact on the pending trial. In addition, calling Williams as a witness would not have changed the outcome of Petitioner's trial, given the weight of the evidence against him. Therefore, Petitioner has failed to show that his trial counsel was ineffective in not calling Williams as a witness.

### c. Trial Counsel's Decision not to Call Michael Melius as a Witness

Petitioner maintains that trial counsel's decision not to call Michael Melius ("Melius") as a witness at trial amounts to a denial of his right to effective assistance of counsel. In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois first noted that trial counsel's decision not to call Michael Melius as a witness was not deficient inasmuch as trial counsel could have reasonably determined that such testimony "would reinforce, rather than 'blunt,' the State's suggested motive for the murder of Entrata." *Enis III*, 743 N.E.2d at 14. In addition, the Supreme Court of Illinois stated that Michael Melius' testimony "would not have negated defendant's motive for murdering Entrata," and would not have "called into doubt the testimony of the three eyewitnesses who identified defendant." *Id.* Finally, the Supreme Court of Illinois

stated that even if trial counsel's decision not to call Michael Melius was deficient, Petitioner still "failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different." *Id.*

We find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. As the court noted, Melius' testimony at the first trial was far from one-sided. For example, by testifying that he recalled telling Petitioner that "the outcome of the sexual assault case depended largely on the credibility of Entrata," Melius likely bolstered the State's motive theory. *Id.* at 13-14. In light of the possible prejudice against Petitioner that would result from this testimony, it is certainly within reason that counsel at the second trial might avoid calling Melius. In addition, calling Melius as a witness would not have changed the outcome of Petitioner's trial, given the weight of the evidence against him. Therefore, Petitioner has failed to show that his trial counsel was ineffective in not calling Melius as a witness.

### d. Trial Counsel's Decision not to Call Kathleen Jackson and R.C. Burton as Witnesses

Petitioner maintains that trial counsel's decision not to call R.C. Burton ("Burton") and Kathleen Jackson ("Jackson") as witnesses at trial amounts to a denial of his right to effective assistance of counsel. Petitioner claims that Jackson

would have testified to seeing an African-American male dressed in dark clothes and wearing sunglasses similar to that of the suspect in an elevator at an apartment complex near the crime scene about 15 to 20 minutes prior to the murder. *Enis I*, 564 N.E.2d at 1161. As we have already discussed above, however, other facts discount the probative value of Jackson's proposed testimony. Petitioner claims that Burton, his landlord, would have placed the alleged getaway car at Petitioner's apartment on the morning of the murder, just before the murder. However, as we discuss below in our analysis of Petitioner's ineffective assistance of counsel claims against appellate counsel, Petitioner's characterization of Burton's proposed testimony is of doubtful validity.

In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois found that Petitioner's claims of ineffective assistance of trial counsel for failing to call Jackson and Burton as witnesses were waived because they could have been raised on direct appeal. *Enis III*, 743 N.E.2d at 15-16. A state court's finding of waiver for failure to raise a claim on direct appeal is an independent and adequate state procedural finding which procedurally defaults that claim and bars it from federal *habeas* review. *Schaff*, 190 F.3d at 526.

Since the Supreme Court of Illinois found that Petitioner's claims were waived on an independent and adequate state procedural ground, Petitioner's claims in

federal court are procedurally defaulted. In addition, Petitioner has not shown

sufficient cause for his failure to raise the procedurally defaulted ineffective

assistance of counsel claims at the appropriate time. Petitioner alleges that he failed

to raise these claims on appeal due to ineffective assistance of appellate counsel,

which would constitute "cause" for failing to raise the defaulted claims if it satisfies

the *Strickland* test. *Coleman*, 501 U.S. at 753-54. However, as discussed below,

because this court finds that the underlying issue of trial counsel's ineffectiveness for

not calling Jackson and Burton has no merit, appellate counsel was not ineffective

for choosing not to raise the claim. Since Petitioner did not suggest any alternative

sufficient cause, this court need not address whether the failure to present these

claims resulted in actual prejudice. Furthermore, there is no indication that refusal to

review by this court would result in a fundamental miscarriage of justice, given the

evidence against Petitioner. *Scillia*, 193 F.3d at 917.   Therefore, we find that the

claim of ineffective assistance of trial counsel regarding trial counsel's decision not

to call Jackson and Burton as witnesses is procedurally defaulted. Since we find that

neither exception to procedural default is applicable, procedural default bars *habeas*

review on this claim. *Id.*


### e. Trial Counsel's Decision not to Call Ray Norvell as a Witness

Petitioner maintains that trial counsel's decision not to call Roy Norvell ("Norvell") as a witness at trial amounts to a denial of his right to effective assistance of counsel. Petitioner initially sought to bar and successfully did bar Norvell from testifying at his trial, apparently out of concern that Norvell would have testified to seeing a car similar to that of Petitioner's girlfriend in the victim's parking lot two or three days prior to the murder. *Enis III*, 743 N.E.2d at 16. Now, Petitioner apparently believes that Norvell's testimony would have helped him.

In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois noted that Petitioner's Amended Petition for Post-Conviction Relief did not contain an affidavit from Roy Norvell, but instead relied on documents from other individuals. *Enis III*, 743 N.E.2d at 16-17. The Supreme Court of Illinois also found that even if it considered the other documents in the absence of an affidavit from Norvell, "none of the documents support defendant's contention that Roy Norvell's testimony would have rebutted" the testimony of one of the State's witnesses. *Id.* As the Supreme Court of Illinois noted, the supporting documents regarding Norvell's observations suggest only that he saw "a black male, other than defendant, . . . in a burgundy, red or blue vehicle in the parking lot three days before the murder." *Id.* at 17. The Supreme Court of Illinois came to the conclusion that, based on the record, Petitioner "failed to make a

substantial showing that trial counsel was ineffective for failing to call Norvell as a witness." *Id.*

We find that the conclusion of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Norvell's proposed testimony that another individual, similar in description to the suspect and driving a car similar to the getaway car, was near the crime scene in the days before the crime, would not have changed the outcome of Petitioner's trial, given the weight of the evidence against him. Therefore, Petitioner has failed to show that his trial counsel was ineffective for not calling Norvell as a witness.

### f. Trial Counsel's Decision not to Subpoena Joseph Caliendo and David Asma

Petitioner maintains that trial counsel's decision not to subpoena Joseph Caliendo ("Caliendo") and David Asma ("Asma") amounts to a denial of his right to effective assistance of counsel. Petitioner argues that the testimony of Caliendo and Asma would have impeached the identification testimony of witnesses Clara Burk ("Burk"), Richard Hanson ("Hanson"), and Sylvia Barrett ("Barrett").

Burk, Hanson, and Barrett were all eyewitnesses for the State who reported seeing the suspect in the parking lot of the victim's apartment complex on the day of the murder. Caliendo and Asma were investigators for the Lake County public

31

defender. *Enis III*, 743 N.E.2d at 17. Petitioner claims that Caliendo would have testified to several points. First, Caliendo reportedly would have testified that "Burk had stated that she had met with the prosecutors hundreds of times going over her testimony and that she would not speak to Petitioner's investigators because she was for the prosecution and against Petitioner." (S. Am. Pet. ¶ 256). Second, Petitioner claims that Caliendo would have testified that Hanson stated that "he was not positive that the Petitioner was the man he saw in the parking lot on the day of the murder." (S. Am. Pet. ¶ 257). Asma reportedly would have testified that Barrett told him that she did not recognize Petitioner as the man she had seen in the parking lot when she saw Petitioner at a hearing on February 18, 1988. (S. Am. Pet. ¶ 258). In addition, Petitioner claims that both Caliendo and Asma would have testified that after Barrett picked Petitioner's photo from a photo line up, a Waukegan police officer commented, "Yeah, that's the guy." (S. Am. Pet. ¶ 258).

In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois found that the claims relating to impeachment of the testimony of Burk and Hanson were waived because they were not raised in any of Petitioner's post-conviction filings, but rather were presented for the first time before the Supreme Court of Illinois. *Enis III*, 743 N.E.2d at 17. Failure to raise a claim in a post-trial motion is an independent and adequate state procedural ground which procedurally defaults the claim and bars it from federal *habeas* review. *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

Since the Supreme Court of Illinois found that Petitioner's claims relating to trial counsel's decision not to subpoena Caliendo and Asma to impeach Burk and Hanson were waived on an independent and adequate state procedural ground, Petitioner's claims in federal court are procedurally defaulted. In addition, Petitioner has not shown sufficient cause for his failure to raise the procedurally defaulted ineffective assistance of counsel claims at the appropriate time. Petitioner alleges that he failed to raise these claims on appeal due to ineffective assistance of appellate counsel, which would constitute "cause" for failing to raise the defaulted claim if it satisfies the *Strickland* test. *Coleman*, 501 U.S. at 753-54. However, as discussed below, because this court finds that the underlying issue of trial counsel's ineffectiveness for choosing not to subpoena Caliendo and Asma to impeach Burk and Hanson has no merit, appellate counsel was not ineffective for choosing not to raise the claim. Since Petitioner did not suggest any alternative sufficient cause, this court need not address whether the failure to present these claims resulted in actual prejudice. Furthermore, there is no indication that refusal to review by this court would result in a fundamental miscarriage of justice, given the evidence against Petitioner. *Scillia*, 193 F.3d at 917. Therefore, we find that the claim of ineffective assistance of trial counsel regarding trial counsel's decision not to subpoena Caliendo and Asma to impeach Burk and Hanson is procedurally defaulted. Since we find that neither exception to procedural default is applicable, procedural default bars *habeas* review on this claim. *Id.*

In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois also reviewed Barrett's testimony in the trial court and determined that the proposed testimony in the affidavits of Caliendo and Asma could have impeached Barrett's testimony at Petitioner's second trial on only one point. *Id.* at 17-18. Specifically, the Supreme Court of Illinois noted that Caliendo and Asma could have impeached Barrett's testimony that she had recognized Petitioner at the February 18, 1988 hearing, and that instead of asking Asma to take the stand and testify to Barrett's prior statement that she did not recognize Petitioner at that hearing, Petitioner's trial counsel impeached Barrett with her own contrary testimony from the first trial. *Id.* The Supreme Court of Illinois held that "[d]efendant . . . failed to demonstrate how counsel's decision to perfect the impeachment of Barrett by way of stipulation, rather than with Asma's live testimony, is objectively unreasonable." *Id.*

Finally, the Supreme Court of Illinois did not find that any prejudice resulted from choosing not to call Caliendo and Asma with regard to the reinforcement that Barrett received from the Waukegan police officer after identifying Petitioner in a photo line-up. *Id.* We find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908. The comment of "[y]eah, that's the guy" by a Waukegan police officer came after Barrett's initial identification of the Petitioner rather than before, and we do not find that this piece of evidence would

have changed the outcome of Petitioner's trial. Therefore, Petitioner has failed to show that his trial counsel was ineffective in choosing not to subpoena Caliendo and Asma.

### g. Trial Counsel's Decision not to Call Dr. Solomon Fulero as a Witness

Petitioner maintains that trial counsel's decision not to call Fulero as a witness at trial amounts to a denial of his right to effective assistance of counsel. We have earlier in this opinion addressed four of the topics on which Fulero would have testified and found that we agreed with the conclusion of the Supreme Court of Illinois that these proposed testimony on the four topics would not have changed the outcome of Petitioner's trial. We therefore do not find sufficient prejudice from the decision not to call Fulero at trial to testify regarding those four topics to warrant *habeas* relief.

Petitioner claims that Fulero would have testified on a fifth topic as well, namely, the difficulty of cross-racial identification by witnesses. Petitioner contends that most of the eyewitnesses of the incidents at issue were white, while Petitioner and the suspect were both African-American. Therefore, Petitioner claims that Fulero's proposed testimony on this fifth topic could have changed the outcome of the trial and that Petitioner's counsel at the second trial was deficient for failing to bring this evidence before the jury.

In its opinion addressing Petitioner's Amended Petition for Post-Conviction

Relief, the Supreme Court of Illinois concluded that trial counsel's decision not to

seek expert opinions from Fulero was not deficient. *Enis III*, 743 N.E.2d at 19-20.

At trial, defense counsel "aggressively explored the question of accuracy and

reliability of the witness' identification" *Id.* at 20. The Supreme Court of Illinois

also emphasized that three separate witnesses identified the Petitioner and that based

on the affidavit of Fulero, "there is no reasonable probability that the jury's verdict

would have been different had Fulero testified." *Id.* Finally, the Supreme Court of

Illinois noted that even if trial counsel's "decision was objectively unreasonable,

defendant has failed to make a substantial showing that he suffered resulting

prejudice." *Id.*

We find that the decision of the Supreme Court of Illinois was reasonable and

was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1);

*Henderson*, 354 F.3d at 908. The decision not to utilize an expert in casting doubt

upon eyewitness testimony is within the bounds of professional competence in this

case. While the information regarding cross-racial identification may not be

common knowledge to most jurors, the broader issue of witness reliability

undoubtedly is. In this case, where defense counsel sought to drive home the

concerns surrounding eyewitness identification at trial, ultimately to no avail, we

believe that counsel did not breach the bounds of professional competence. Whether

or not to employ an expert who will, in effect, reiterate concerns regarding witness

reliability is a matter of trial strategy. In addition, calling Fulero as a witness would not have changed the outcome of Petitioner's trial, given the weight of the evidence against him. Therefore, Petitioner has failed to show that his trial counsel was ineffective for not calling Fulero as a witness.

### h. Trial Counsel's Decision not to Prepare or Call Petitioner to Testify

Petitioner maintains that trial counsel's decision not to prepare him to testify or call him as a witness at trial amounts to a denial of his right to effective assistance of counsel. In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois noted that Petitioner acknowledged that "he was aware of his right to testify" and that nothing in the record demonstrated that Petitioner "advised his counsel of his desire or intention to testify." *Enis III*, 743 N.E.2d at 22-24. Furthermore, the Supreme Court of Illinois stated that upon learning he would "not be called as a witness, defendant failed to assert his right by informing the trial court that he wished to testify." *Id.* Accordingly, the Supreme Court of Illinois found that "the trial court properly rejected" this claim. *Id.* We find that the conclusion of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1);*Henderson, 354*

F.3d at 908.  Therefore, Petitioner has failed to show that his trial counsel was ineffective in not calling Petitioner to testify.

### i. Trial Counsel's Decisions not to Call Joseph O'Neill and Aaron Griffin as Witnesses

Petitioner maintains that trial counsel's decisions not to call Joseph O'Neill ("O'Neill") and Aaron Griffin ("Griffin") as witnesses at trial amount to a denial of Petitioner's right to effective assistance of counsel.  However, Petitioner did not at any time present these claims to the Illinois state courts for review.  The doctrine of fair presentment requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  Since Petitioner failed to meet this requirement, we find that these claims are procedurally defaulted.

In addition, Petitioner has not attempted to overcome the procedural default by asserting sufficient cause for failure to raise these claims in the state court.  On post conviction review, Petitioner did not address either issue in correlation with his allegation of ineffective assistance of appellate counsel, nor has Petitioner subsequently presented any arguments relating to sufficient cause.  Lack of sufficient cause for failure to raise the claims in the state court proceedings precludes this court from reviewing the procedurally defaulted claims. *Scillia*, 193 F.3d at 917.

Accordingly, this court need not address whether the failure to present these claims resulted in actual prejudice

Furthermore, there is no indication that this court's refusal to review the above claims results in a fundamental miscarriage of justice. *Id.* Neither the testimony of O'Neill nor the testimony of Griffin implicates an "extraordinary case, where a constitutional violation has probably resulted in conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). We find that the claims are procedurally defaulted and that neither exception is applicable. Therefore, Petitioner has failed to show that his trial counsel was ineffective for failing to call O'Neill and Griffin as witnesses.

### j. Trial Counsel's Decisions not to Object to Testimony and Evidence

Petitioner maintains that trial counsel's decisions not to object to 1) the testimony of Thacker, 2) the admission of photographs taken by Meana, and 3) the State's impeachment of Twardy amount to a denial of his right to effective assistance of counsel. However, in its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois found that these claims were waived because each could have been raised on direct appeal. *Enis III*, 743 N.E.2d at 20. A state court's pronouncement of waiver for failure to raise a claim on direct appeal is an independent and adequate state procedural finding, which procedurally defaults that claim and bars it from federal *habeas* review. *Schaff*, 190 F.3d at 526. Since the Supreme Court of Illinois found that each of these claims was waived on an independent and adequate state procedural ground, we find that Petitioner's

claims in federal court are procedurally defaulted.

In addition, Petitioner has not shown sufficient cause for his failure to raise the procedurally defaulted claims at the appropriate time. Petitioner alleges ineffective assistance of appellate counsel, which would constitute "cause" for failing to raise the defaulted claim if it satisfies the *Strickland* test. *Coleman*, 501 U.S. at 753-54. However, as discussed below, this court does not find that appellate counsel provided ineffective assistance that rises to the *Strickland* standard with respect to these claims. Since Petitioner did not suggest any alternative sufficient cause, this court need not address whether the failure to present these claims resulted in actual prejudice. Nevertheless, with respect to these claims, we find that Petitioner also fails to show that actual prejudice resulted from such failure.

As the Supreme Court of Illinois noted, upon agreement between defense counsel and the State, Thacker testified only that the defendant "fit the general description of the man he saw in the parking lot." *Enis III*, 743 N.E.2d at 21. This court agrees with the conclusion of the Supreme Court of Illinois that in light of three other witnesses' positive identification of Petitioner, counsel's failure to object to the testimony of Thacker was not prejudicial to the defendant's case. *Id.* In addition, the Supreme Court of Illinois addressed the admission of the photographs taken by Meana and held "that any error . . . was not a material factor in defendant's conviction; that it did not deprive defendant of a fundamentally fair trial; and that it is not reversible error." *Id.* at 22. Finally, with respect to the State's impeachment of Twardy, the Supreme Court of Illinois held that "the outcome of defendant's trial would not have been different had counsel preserved this issue for review." *Id.* at 22.

We agree with the conclusions of the Supreme Court of Illinois. Furthermore, refusal by this court to review the above claims does not result in a fundamental miscarriage of justice. *Schlup v. Dalo*, 513 U.S. 298, 316 (1995). We find that the claims are procedurally defaulted and that neither exception applies. Therefore, Petitioner has failed to show that his trial counsel was ineffective for failing to object to Thacker's testimony, the admission of the photographs taken by Meana, and the State's impeachment of Twardy.

### k. Trial Counsel's Decision not to Produce Exculpatory Evidence

Petitioner maintains that trial counsel's decision not to produce exculpatory evidence at trial amounts to a denial of his right to effective assistance of counsel. However, Petitioner did not present this claim on direct appeal, therefore, we find that this claim is procedurally defaulted.

Petitioner has not shown sufficient cause for his failure to raise the procedurally defaulted claim at the appropriate time. Petitioner alleges ineffective assistance of appellate counsel, which would constitute "cause" for failing to raise the defaulted claim if it satisfies the *Strickland* test. *Coleman*, 501 U.S. at 753-54. However, as discussed below, this court does not find that appellate counsel provided ineffective assistance that rises to the *Strickland* standard with respect to this claim.

In addition, had Petitioner been able to show cause for failure to raise the claim at the appropriate time, he is unable to show that actual prejudice occurred. At trial, trial counsel spent considerable time in both opening and closing statements emphasizing the lack of physical evidence that the State was able to produce to

connect the Petitioner to the crime. *Enis III*, 743 N.E.2d at 20. Since trial counsel

alerted the jury to this deficiency in the State's case, we find it reasonable to

conclude that the jury did not find physical evidence linking Petitioner to the crime

necessary to establish Petitioner's guilt beyond a reasonable doubt. Therefore, trial

counsel's failure to present testimony to confirm the lack of physical evidence was

not prejudicial to Petitioner's case. Furthermore, this court does not find that its

refusal to review this claim results in a fundamental miscarriage of justice. Petitioner

has not satisfactorily established that the introduction of this exculpatory evidence

would have made it more likely than not that no reasonable juror would have

convicted him. *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (citing*Schlup*,

513 U.S. at 327)). We find that Petitioner's claim is procedurally defaulted and that

neither exception is applicable. Therefore, Petitioner has failed to show that his trial

counsel was ineffective for failing to introduce exculpatory evidence.


### l. Trial Counsel's Decision not to Preserve for Appeal Petitioner's Claims

Petitioner maintains that trial counsel's decision not to preserve for appeal his

claims with respect to 1) the impeachment of Twardy, 2) the time frame in which

Entrata reported that Petitioner raped her, and 3) the testimony of Meana amount to a

denial of his right to effective assistance of counsel. Petitioner did raise the above

claims on direct appeal; however, the Supreme Court of Illinois denied the

Petitioner's claims. *Enis II*, 645 N.E.2d at 872-74. On direct appeal, the Supreme

Court of Illinois reasoned that even if Petitioner proved that trial counsel was

ineffective based on these claims, such ineffective assistance would not warrant a

new trial because counsel's "alleged deficiencies did not so undermine the adversarial nature of the defendant's trial that one could question whether the result of the trial was fundamentally unjust." *Enis II*, 645 N.E.2d at 874. Under *Strickland*, a claim can be dismissed when there is a finding that ineffective assistance of counsel would not warrant a new trial. 466 U.S. at 697. Therefore, the Supreme Court of Illinois had no need to apply the two-pronged *Strickland* test to determine whether the trial counsel was, in fact, ineffective. We find that the decision of the Supreme Court of Illinois was reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908.

Furthermore, we note that Petitioner's claim of ineffective assistance of counsel would have failed the two-pronged *Strickland* test had the Supreme Court of Illinois chosen to apply it. Petitioner has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of Petitioner's trial probably would have been different. *Strickland*, 466 U.S. at 694. In light of the considerable evidence against Petitioner, we find that these claims would not have eventually exonerated the Petitioner and thus, the preservation of these claims would not ultimately have led to a different result. Therefore, Petitioner has failed to show that his trial counsel was ineffective for failing to preserve for appeal Petitioner's claims.

## 2. Claims against Appellate Counsel

As discussed above, the appellate counsel's failure to raise claims, on direct appeal, of ineffective assistance by Petitioner's trial counsel, created several

procedural defaults, which could only be overcome by either a successful showing of sufficient cause and actual prejudice or, in the absence of such a showing, that the refusal to review the claims would result in a "fundamental miscarriage of justice". *Scillia*, 193 F.3d at 917. Ineffective assistance of counsel constitutes "cause" for failing to raise the defaulted claim if it satisfies the *Strickland* test. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). Consequently, we apply the *Strickland* test to Petitioner's claims that his appellate counsel provided ineffective assistance of counsel by failing to raise the following claims against trial counsel: (a) ineffective assistance of trial counsel for failing to call various witnesses at trial, (b) ineffective assistance of trial counsel for failing to object to the testimony of a witness, and (c) ineffective assistance of trial counsel for failing to object to a ruling. The issues before this court are whether appellate counsel's performance violated Petitioner's Sixth Amendment right to effective assistance of counsel and accordingly, whether there was sufficient cause for various procedural defaults.

### a. Failure of Appellate Counsel to Raise Claims that Trial Counsel's Was Ineffective for Failing to Call Various Witnesses

Petitioner maintains that appellate counsel's failure, on direct appeal, to raise various claims related to ineffective assistance of trial counsel amounts to a denial of his right to effective assistance of counsel. Specifically, Petitioner alleges that appellate counsel should have claimed that trial counsel was ineffective for counsel's failure to call (i) Williams, (ii) Melius, (iii) Jackson, (iv) Burton, (v) Norvell, (vi) Caliendo and Asma, (vii) Fulero, (viii) Petitioner, (ix) Griffin and O'Neill, and (x)

Robert Wilson ("Wilson") as witnesses at trial.

### (i) Claim Against Appellate Counsel with Respect to Williams

As discussed above, during Petitioner's post-conviction appeal, the Supreme Court of Illinois addressed the merits of Petitioner's claims against trial counsel for counsel's failure to call Williams and found that the claim did not have merit. *Enis III*, 743 N.E.2d at 12-13. We have already held that this decision by the Supreme Court of Illinois was reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel. The Supreme Court of Illinois reasoned that because the underlying issue of trial counsel's ineffectiveness had no merit, "defendant has suffered no prejudice due to appellate counsel's failure to raise this issue on appeal." *Enis III*, 742 N.E.2d at 13. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Williams.

### (ii) Claim Against Appellate Counsel with Respect to Melius

During Petitioner's post-conviction appeal, the Supreme Court of Illinois addressed the merits of Petitioner's claims against trial counsel for counsel's failure

to call Melius as a witness and found that the claim did not have merit. *Enis III*, 743 N.E.2d at 13-14. We have already held that this decision by the Supreme Court of Illinois was reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel. The Supreme Court of Illinois reasoned that because the underlying issue of trial counsel's ineffectiveness had no merit, "defendant has suffered no prejudice due to appellate counsel's failure to raise this issue on direct appeal." *Enis III,* 742 N.E.2d at 14. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Melius.

### (iii) Claim Against Appellate Counsel with Respect to Jackson

The Supreme Court of Illinois found that Petitioner's claim of ineffective assistance of trial counsel for counsel's failure to call Jackson was waived. *Enis III,* 743 N.E.2d at 15-16. However, the Supreme Court of Illinois addressed the merits of the underlying claim to determine whether appellate counsel provided ineffective assistance of counsel for not raising the claim on direct appeal. *Id.*

Petitioner maintains that Jackson's testimony would have been favorable to his defense because it would have placed someone other than the defendant, who looked similar to the defendant, in the area at the time of the crime. However, the Supreme Court of Illinois noted that "there is nothing connecting the person Jackson saw with the crime, nor does it necessarily follow that her testimony would have cast doubt over the identification of defendant as offender." *Id.* at 16. We agree, and therefore find that the Supreme Court of Illinois correctly ruled that the above claim against trial counsel had no merit.

Further, the Supreme Court of Illinois held that because trial counsel was not ineffective for not calling Jackson, appellate counsel was not ineffective for failing to raise the claim against trial counsel. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Jackson.

### (iv) Claim Against Appellate Counsel with Respect to Burton

The Supreme Court of Illinois found that Petitioner's claim of ineffective assistance of trial counsel for counsel's failure to call Burton was waived.*Enis III,* 743 N.E.2d at 14-15. However, the Supreme Court of Illinois addressed the merits

of the underlying claim to determine whether appellate counsel provided ineffective assistance of counsel for not raising the claim on direct appeal. *Id.*

Petitioner claimed Burton would have testified that the maroon car belonging to Petitioner, alleged to be seen leaving the scene of the crime, was actually parked in the Petitioner's driveway at the time of the murder. *Id.* at 14. However, the Supreme Court of Illinois found that trial counsel's failure to call Burton to testify did not constitute ineffective assistance of counsel, as Burton's testimony at the first trial conveyed uncertainty. *Id.* at 15. We agree, and therefore find that the Supreme Court of Illinois correctly ruled that the above claim against trial counsel had no merit.

Further, the Supreme Court of Illinois held that because trial counsel was not ineffective for not calling Burton, appellate counsel was not ineffective for failing to raise the claim against trial counsel. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Burton.

### (v) Claim Against Appellate Counsel with Respect to Norvell

As discussed above, during Petitioner's post-conviction appeal, the Supreme Court of Illinois addressed the merits of Petitioner's claims against trial counsel for

counsel's failure to call Norvell and found that the claim did not have merit. *Enis III*, 743 N.E.2d at 15-16. We have already held that this decision by the Supreme Court of Illinois was reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel. The Supreme Court of Illinois again noted that a defendant suffers no prejudice from appellate counsel's failure to raise an issue on direct appeal where the underlying issue is not meritorious." *Enis III*, 743 N.E.2d at 16 (quoting *Childress,* 740 N.E.2d 32, 36 (2000). The Supreme Court of Illinois therefore reasoned that because the underlying issue of trial counsel's ineffectiveness had no merit, appellate counsel was not ineffective for failing to raise the claim. *Enis III*, 742 N.E.2d at 16. We agree, and find that the decision of the Supreme Court is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Norvell.

### (vi) Claim Against Appellate Counsel with Respect to Caliendo and Asma

The Supreme Court of Illinois examined Petitioner's underlying claims of ineffective assistance of trial counsel for its failure to call Caliendo and Asma.*Enis III*, 743 N.E.2d at 17-18. Petitioner claims that the testimony of both investigators

for the Lake County public defender would have impeached the credibility of other witnesses.

With respect to the issue of impeaching Burk, Caliendo reportedly would have testified that "Burk had stated that she had met with the prosecutors hundreds of times to go over her testimony and that she would not talk to Petitioner's investigators because she was for the prosecution and against Petitioner." (S. Am. Pet ¶256). With respect to the issue of impeaching Hanson, Petitioner claims that Caliendo would have testified that Hanson stated that "he was not positive that Petitioner was the man he saw in the parking lot on the day of the murder." (S. Am. Pet ¶257). The Supreme Court of Illinois found that Petitioner's trial counsel employed a trial strategy that cast doubt on the accuracy of Burk and Hanson's testimony though cross-examination. Furthermore, as discussed above, the Supreme Court of Illinois found that the testimony of Caliendo and Asma would not have impeached Barrett, and further that their testimony was unnecessary because Barrett's own testimony from the first trial, which the parties stipulated to, served the same purpose. We agree, and therefore find that the Supreme Court of Illinois correctly ruled that the above claims against trial counsel had no merit.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel, reasoning that because the underlying issue of trial counsel's ineffectiveness had no merit, appellate counsel was not ineffective for failing to raise the claim. *Enis III*, 742 N.E.2d at 18. We agree, and find that the decision of the

Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Caliendo and Asma.

### (vii) Claim Against Appellate Counsel with Respect to Fulero

As discussed above, during Petitioner's post-conviction appeal, the Supreme Court of Illinois addressed the merits of Petitioner's claims against trial counsel for its failure to call Fulero and found that the claim did not have merit. *Enis III,* 743 N.E.2d at 19-20. At trial, defense counsel "aggressively explored the question of accuracy and reliability of the witness' identification." *Id.* at 20. Thus, the Supreme Court of Illinois did not find that there was a reasonable probability that the jury verdict would have been different had Fulero testified. *Id.* We have already held that this decision by the Supreme Court of Illinois was reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel, reasoning that because the underlying issue of trial counsel's ineffectiveness had no merit, appellate counsel was not ineffective for failing to raise the claim. *Enis III,* 742 N.E.2d at 20. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial

counsel provided ineffective assistance of counsel when trial counsel decided not to call Fulero.

### (viii) Claim Against Appellate Counsel with Respect to Petitioner

As discussed above, during Petitioner's post-conviction appeal, the Supreme Court of Illinois addressed the merits of Petitioner's claims against trial counsel for its failure to call Petitioner as a witness and found that the claim did not have merit. *Enis III*, 743 N.E.2d at 22-23. We have already held that this decision by the Supreme Court of Illinois was reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel, reasoning that because the underlying issue of trial counsel's ineffectiveness had no merit, appellate counsel was not ineffective for failing to raise the claim. *Enis III*, 742 N.E.2d at 23. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Petitioner as a witness.

### (ix) Claim Against Appellate Counsel with Respect to O'Neill and Griffin

Petitioner also argues that appellate counsel's decision not to claim that trial counsel was ineffective for not calling Griffin and O'Neal as witnesses at trial

amounts to ineffective assistance of appellate counsel. However, as discussed above, at no time did Petitioner present this claim to the Illinois state courts for review. Under the doctrine of fair presentment, the federal habeas court is barred from reviewing the claim. Petitioner did not attempt to overcome this procedural default by asserting sufficient cause. Lack of sufficient cause for failure to raise the claims in the state court proceedings precludes this court from reviewing the procedurally defaulted claims. *Scillia*, 193 F.3d at 917. Furthermore, for the reasons stated above, we do not find that denying the claim will result in a fundamental miscarriage of justice. *Murray*, 477 U.S. at 496.

### (x) Claim Against Appellate Counsel with Respect to Wilson

Finally, Petitioner argues that Wilson should have been called to testify relating to the lack of physical evidence connecting Petitioner to the crime. The Supreme Court of Illinois examined Petitioner's underlying claim of ineffective assistance of trial counsel for counsel's failure to produce evidence from the Northern Illinois Police Crime Laboratory. *Enis III*, 743 N.E.2d at 20. It concluded that trial counsel was not ineffective because trial counsel stressed the lack of physical evidence in his opening and closing statements. *Id.* We agree, and therefore find that the Supreme Court of Illinois correctly rule that the above claim against trial counsel had no merit.

Further, the Supreme Court of Illinois discussed the related claim against appellate counsel, reasoning that because the underlying issue of trial counsel's

ineffectiveness had no merit, appellate counsel was not ineffective for failing to raise the claim. *Enis III*, 742 N.E.2d at 20. We agree, and find that the decision of the Supreme Court of Illinois is reasonable and not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for not claiming that trial counsel provided ineffective assistance of counsel when trial counsel decided not to call Wilson.

### b. Failure of Appellate Counsel to Raise the Claim that Trial Counsel was Ineffective for Failing to Object to a Witness

Petitioner argues that appellate counsel provided ineffective assistance of counsel by its decision not to claim that trial counsel was ineffective for not objecting when the State called Thacker as a witness. As noted above, the Supreme Court of Illinois found that trial counsel's decision not to object to Thacker testifying as a witness was "a matter of trial strategy." *Enis III*, 743 N.E.2d at 21. Further, the Supreme Court of Illinois noted that even if trial counsel was deficient in not objecting, Petitioner "failed to demonstrate resulting prejudice." *Id.* Ultimately, the Supreme Court of Illinois found that because Petitioner's claim of ineffective assistance of counsel would not have been successful against trial counsel, Petitioner's appellate counsel was not ineffective for failing to raise that claim. *Id.* We find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel

was ineffective for failing to claim that trial counsel was ineffective for not objecting to the testimony of Thacker.

### c. Failure of Appellate Counsel to Raise the Claim that Trial Counsel was Ineffective for Failing to Object to a Ruling

Petitioner argues that appellate counsel provided ineffective assistance of counsel because it failed to claim that trial counsel was ineffective for not raising the pretrial ruling barring the testimony of Meana. In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois noted that it had already reviewed this issue on direct appeal. *Enis III*, 743 N.E.2d at 22. The Supreme Court of Illinois then found that testimony of Meana at trial did not deprive Petitioner "of a fundamentally fair trial." *Id.* Additionally, the Supreme Court of Illinois reasoned that because Petitioner's claim of ineffective assistance of counsel would not have been successful against trial counsel, Petitioner's appellate counsel was not ineffective for failing to raise the claim. *Id.* We agree and find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that his appellate counsel was ineffective for failing to claim that trial counsel was ineffective for not raising the pretrial ruling barring the testimony of Meana.

## D. Petitioner's Right to Testify

Petitioner argues that his constitutional right to Due Process was violated when trial counsel did not call Petitioner to testify. (S. Am. Pet. ¶¶ 306-318). On direct appeal, the Supreme Court of Illinois addressed this issue in the context it was presented - as an ineffective assistance of counsel claim that alleged deficiency by trial counsel for failing to call the Petitioner as a witness at trial. *Enis III*, 743 N.E.2d at 22-23. The Supreme Court of Illinois found (1) that Petitioner "acknowledges that he was aware of his right to testify", (2) that nothing in the record demonstrated that Petitioner, "at any time, advised his counsel of his desire or intention to testify", and (3) that upon learning that he would "not be called as a witness, defendant failed to assert his right by informing the trial court that he wished to testify." *Id*. Ultimately, the Supreme Court of Illinois concluded that "in the absence of a contemporaneous assertion by defendant of his right to testify, the trial court properly rejected [the] post-conviction claim [of ineffective assistance of counsel]." *See id.*; *see* also *U.S. v. Manjarrez*, 258 F.3d 618, 623-24 (7th Cir. 2001) (stating "the Constitution does not require a trial court to question a defendant *sua sponte* in order to ensure that his decision not to testify was undertaken knowingly and intelligently unless there is some indication that the defendant has been prevented from exercising that right"). Therefore, based on the conclusions of the Supreme Court of Illinois and the record before us, we find that there is no basis for Petitioner's claim that his Due Process Rights were violated.

### E. Guilt Beyond a Reasonable Doubt

Petitioner contends that the eyewitness testimony at trial did not establish his guilt beyond a reasonable doubt. In its opinion addressing Petitioner's direct appeal from his re-trial, the Supreme Court of Illinois concluded that it "could find no ground in the record to disturb the jury's determination of the defendant's guilt." *Enis II*, 645 N.E.2d at 870-872. The critical inquiry on review of a defendant's conviction, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Supreme Court of Illinois applied the inquiry test set forth in *Jackson* and considered the evidence in the light most favorable to the State. *Enis II*, 645 N.E.2d at 871-72. Ultimately, the Supreme Court of Illinois determined that there was "ample evidence from which the jury could have reasonably found the defendant guilty beyond a reasonable doubt." *Id.* In light of the timing of the murder and the three witnesses' identification of Petitioner, we find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908. Therefore, Petitioner has failed to show that he was not convicted beyond a reasonable doubt.

F. Prosecutorial Misconduct

Petitioner argues that the state prosecutor made improper remarks at the closing argument. Specifically, Petitioner alleges that the prosecution (1) improperly presented impeachment evidence as substantive evidence, (2) improperly stated Petitioner was guilty of a sexual assault against Entrata, (3) improperly referenced a prosecutor's testimony about the sexual assault of Entrata, and (4) improperly implied that Petitioner would have been found guilty of the sexual assault of Entrata. In considering a claim for prosecutorial misconduct, a court must determine whether the comments made by the prosecutor were "improper"; and, if they were improper, whether those comments "deprived a defendant of a fair trial." *Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986); *Whitehead v. Cohan*, 263 F.3d 708, 728-730 (2001).

In its opinion addressing Petitioner's Direct Appeal from his re-trial, the Supreme Court of Illinois rejected Petitioner's arguments relating to prosecutorial misconduct arguments. *Enis II*, 645 N.E.2d at 873-75. First, the Supreme Court of Illinois found that any comments using impeachment evidence as substantive evidence were cured when Petitioner objected to such comments, the trial court sustained the objection, and the prosecution corrected its comments. *Id.* at 874. Second, the Supreme Court of Illinois explained that comments with respect to Petitioner being guilty of a sexual assault against Entrata were corrected when the Petitioner objected to the comment, the trial court sustained the objection, and the

trial court ordered the comment stricken from the record. *Id.* at 875. Third, the

Supreme Court of Illinois determined that any comments in reference to the

testimony of a prosecutor about the sexual assault of Entrata were cured when the

Petitioner objected to the comments and the trial court sustained the objection. *Id.*

Finally, the Supreme Court of Illinois concluded that the comments that "Petitioner

would have been found guilty of the sexual assault" of Entrata were not improper

inasmuch as such comments "reminded the jury of the range of sentence that could

have been imposed if the defendant had been convicted of criminal sexual assault"

and further noted that even if such comments were improper, they were not "a

material factor in the determination of the defendant's guilt," or "were not so

egregious that they deprived defendant of a fair trial." *Id.* at 875.

We find that Petitioner has failed to establish that the prosecutor's comments

identified above deprived him of a fair trial. In addition, based on the overwhelming

weight of the evidence presented against Petitioner at trial, we do not find that any of

the prosecutor's comments would have changed the outcome of the trial. *See

Whitehead*, 263 F.3d at 728-29 (stating that "the most important of the *Darden*

factors is the weight of evidence against the defendant.") (quoting *Howard v.

Gramley*, 225 F.3d 784, 793 (7th Cir. 2000)). Accordingly, we find that the decision

of the Supreme Court of Illinois was reasonable and was not contrary to clearly

established federal law. 28 U.S.C. § 2254(d)(1); *Henderson*, 354 F.3d at 908.

Therefore, Petitioner has failed to prove prosecutorial misconduct.

### G. Discovery

Petitioner argues that his constitutional rights were violated when the trial court denied Petitioner's discovery requests for potential *Brady* material. Specifically, Petitioner maintains that his request for the files of the Waukegan Police Department regarding the victim and the Petitioner was improperly denied.

Criminal defendants are entitled to be shown exculpatory evidence in the possession of prosecutors. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). However, the Seventh Circuit has observed that "a *Brady* request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an *in camera* inspection of the government's files in every case." *See U.S. v. Mitchell*, 178 F.3d 904, 909 (7th Cir. 1999) (quoting *U.S. v. Phillips*, 854 F.2d 273, 278 (7th Cir.1988)).

In its opinion addressing Petitioner's Amended Petition for Post-Conviction Relief, the Supreme Court of Illinois denied Petitioner's claim. *Enis III*, 743 N.E.2d at 30-31. Specifically, the Supreme Court of Illinois stated that:

> Discovery was conducted in both of defendant's criminal trials. Defendant did not argue in the circuit court that a discovery violation occurred. Defendant also did not claim a *Brady* violation. Rather, defendant simply argued that there may exist something in the police file that police withheld, which could lead to exculpatory evidence. Under these circumstances we conclude that defendant's subpoena was little more than a fishing expedition and that the circuit court did not abuse its discretion in granting the State's motion to quash.

*Id.* We find that the decision of the Supreme Court of Illinois was reasonable and was not contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1); *Henderson,* 354 F.3d at 908.

### H. Cumulative Effect of Claims I – VII

Petitioner argues that he is entitled to *habeas* relief based on the cumulative effect of the alleged constitutional violations set forth in Claims I through VII of the Petition. Specifically, Petitioner asks this court to examine the "totality of the errors."

A petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Howard,* 185 F.3d at 725 (quoting *O'Sullivan,* 526 U.S. at 845). At no time during state proceedings did Petitioner ever raise a "cumulative effect" or "totality of errors" claim. Since the Petitioner failed to raise this claim, we find that the claim is procedurally defaulted.

In addition, Petitioner has not attempted to overcome the procedural default by asserting sufficient cause for failure to raise this claim in the state court. Neither has Petitioner shown actual prejudice which resulted from such failure. Furthermore, there is no indication that refusal by this court to review Petitioner's claim would result in a fundamental miscarriage of justice. *Scillia,* 193 F.3d at 917. Petitioner has not established that there were errors that, if viewed in its totality, would amount to a

violation of Due Process that "has probably resulted in conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Therefore, we find that the claims are procedurally defaulted and that none of the exceptions are applicable.

## CONCLUSION

Based on the foregoing analysis, we deny the Petitioner's Petition for writ of *habeas corpus*. Further, we deny the Petitioner's motion for discovery.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 29, 2004